## FAYETTE COUNTY
## v.
## JESSE D. JENNINGS.

FEES AND SALARIES—HOW PAID.—Where the county board fixed the salary of the sheriff at $1,200 per annum, and allowed him $800 for pay of deputies, the law contemplates that the expenses of his office, such as pay of deputies, shall first be paid out of the fees received by him, and the balance applied upon the salary of the sheriff. The expenses of the office can in no event become a charge upon the county.

ERROR to the Circuit Court of Fayette county; the Hon. C. S. ZANE, Judge, presiding. Opinion filed April 2, 1880.

Mr. E. M. ASHCRAFT, for plaintiff in error; that in order to charge the county for this claim, there must be some statutory authority directing its payment, cited People v. Board of Sup'rs,

28 How. Pr. 22; 14 Barb. 56; 1 Hill, 362; 6 Hill, 244; 6 Cow.
260; 18 Johns. 242; 16 Wend. 257.

The sheriff takes the office with its burdens: Bryner v.
Board of Sup'rs, 24 Ill. 195.

As to the meaning of "compensation" in the Constitution:
Kilgore v. The People, 76 Ill. 548.

Messrs. HENRY, FARMER & CHAPIN, and Mr. JACOB FOUKE, for
defendant in error, cited Wheelock v. The People, 84 Ill. 551;
Purcell v. Parks, 82 Ill 346.

BAKER, P. J.   Jesse D. Jennings, the defendant in error, was
elected sheriff of Fayette county in November, 1874, and held
the office until December, 1876.   In September, 1874, the board
of supervisors of said county fixed the salary of the sheriff at
$1,200 per annum, and ordered that he should be allowed $800
per annum for pay of deputies.   At the March term, 1878, of
the board of supervisors, Jennings presented an account against
the county wherein he claimed a balance due him of $1,474.65
for deputy hire.   The board refused to allow the claim, and he
appealed to the circuit court, where, at the September term,
1878, he recovered a judgment against the county for the full
amount of his demand.   During his term of office, Jennings
rendered his semi-annual reports as required by law, but paid
no amount whatever into the county treasury from the fees and
earnings of his office.   As we understand his claim, it is that
the collections made by him for fees and services were only suf-
ficient to pay his salary or compensation of $2,400, some inci-
dental expenses, and the sum of $125.35 on the amount paid
out by him to his deputy, leaving $1,474.65 still due him for
expenses of deputy, and which latter sum he insists shall be
paid him by the county.

Counties are involuntary political or civil divisions of the
state, created by general statutes, to aid in the administration
of government.   The statutes confer upon them all the powers
they possess, prescribe all the duties they owe, and impose all
liabilities to which they are subject.   Dillon Mun. Cor. sec. 10a;
Symonds v. Clay County, 71 Ill. 255.   If the county is liable

to pay the demand here made upon it for hire of deputy, it certainly must arise either from some provision of the Constitution, or statute imposing such liability, or from contract. Section 10 of Article 10 of the Constitution of 1870, provides that the county board shall fix the compensation of all county officers, with the amount of their necessary clerk hire, stationery, fuel, and other expenses, and that in all cases where fees are provided for, said compensation shall be paid only out of, and shall in no instance exceed, the fees actually collected, and that compensation shall not exceed certain specified limits, and that the compensation of no officer shall be increased or diminished during his term of office, and that all fees or allowances received in excess of said compensation shall be paid into the county treasury. Prior to the adoption of this constitutional provision, sheriffs and their deputies received their compensation in the shape of fees paid by those who required their services, and which fees were regulated by the State. The sheriff received no salary or other compensation from the county further than certain fees and allowances which were provided by statute to be paid by the county for services rendered either to the county or otherwise, and the liability to pay for which was by statute imposed upon the county. The sheriff took his office *cum onere;* paid for his own stationery, fuel and other expenses; appointed his own deputies, and made such division of fees or other arrangement for their compensation as might be agreed upon, and received no pay from the county except for services rendered. Bryner v. Supervisors, 24 Ill. 195; Irvin v. Alexander County, 63 Ill. 528. There was no legal obligation resting upon the county to pay or compensate the deputy for services or assistance rendered by him to the sheriff, or to refund to the sheriff what he had thus paid. We do not understand the constitutional provision in question to impose any such burden upon the county.

The evil sought to be reached by this section ten, was that in the rapid development of the State and increase of business, the fees of many of the county officers, more especially in the larger and more wealthy counties of the State, had grown out of all just proportion to the value of the abilities required

Fayette County v. Jennings.

and services rendered, and had become a burden upon the people, and a means of corruption and a public detriment and scandal. Various of these officers were receiving compensation, in the shape of fees, that would pay many times over and over again that paid to those occupying the highest and most laborious and responsible positions in the State, and in some instances were suspected of using these vast funds for corrupt purposes. We think it evident, considering the circumstances under which this constitutional provision was adopted, the evil which it was intended to cure, and the language used, that it was not the intention to impose thereby any additional burden of liability upon the county, and require it to pay the deputy hire or clerk hire of a sheriff in cases where the fees collected by him were insufficient to pay both such hire and the maximum compensation that he could in any event retain. The burden of the sheriff's deputy hire, and other expenses, was already upon the sheriff, and there this section ten still left it. But to reach the evil had in view, it was simply intended that the matter of the sheriff's compensation.and expenses should be regulated by law and by the county board; that such compensation and such expenses should still, as theretofore, not be a charge upon the county, but should be paid out of fees collected from those for whom services were performed; but that all fees collected over and above a fair and reasonable compensation for his personal services, and his necessary and actual expenses, should be paid into the county treasury.

The intention of this section ten was, that the county board should, within the limits and under the restrictions imposed thereby, fix the salary or compensation of all county officers, in whatever manner paid—whether by salary taken from the county treasury, or by fees received from those for whom services were rendered. That the amounts so fixed should be the limit of their compensation, but that they might receive and retain in addition thereto the necessary and actual expenses of their office, which also should be allowed them by the county board. The clause, " with the amount of their necessary clerk hire, stationery, fuel and other expenses," is to be regarded as parenthetical. If the office was one of which either. the com-

pensation or expenses constituted a proper and legal charge upon the county, then the liability of the county to pay such compensation as fixed, or such expenses as allowed, continued. But if the office was one the emoluments of which depended upon fees and allowances received and collected, then the compensation was left to be collected, just as theretofore, from fees, and could be paid only out of fees, and in no instance could exceed the fees actually collected.

If the office was one *cum onere*, one where theretofore the officer could make no proper charge against the county for clerk hire, deputy hire, stationery or other expenses, this constitutional provision still left the office an office taken *cum onere*, and not only the compensation, but the expenses of the office were still to be defrayed only out of the fees and perquisites by such officer received. But if such fees exceeded the amount of the compensation or salary fixed, and the amount of the actual and necessary expenses of the office, then such excess could no longer be retained, but must be paid into the county treasury. It is urged the Constitution provides that the board shall fix the compensation, and further provides it shall be paid out of the fees of the office; that when the board does fix that compensation, the officer has a constitutional right to it that cannot be taken away from him by any legislation; and, as we understand the argument made, that this is an appropriation of the fees of the office made by the Constitution itself, to the payment first of the compensation of the officer. We do not regard the argument as sound. The language used does not bear the construction that, at all events, the compensation fixed shall be the first charge to be deducted from these fees, but simply that the compensation fixed "shall be paid only out of the fees;" that is, it shall be paid from no other source than fees. Without this section ten, the office would have been held with all the burdens incident to it, and the incumbent would have had to rely upon the fees collected to pay his deputy hire and expenses, as well as his personal compensation. It was no part of the object of the Constitution to shift this burden of deputy hire and expenses from the fees collected to the county treasury. It was intended, not to give any

additional emoluments or rights to the officer, but to take from him all fees received in excess of the necessary expenses of his office and a reasonable compensation.

We deem it unnecessary to enter into an argument to show that section 51 of the Fees and Salaries Act (R. S. 1874, ch. 53), imposes no obligation upon the county to pay this demand for deputy hire. In fact, said section clearly indicates the legislative intention to be that from the fees received and collected shall be deducted, first, such expenses as the board may approve and allow, and then salary due, and that the remainder shall be paid to the county treasurer. We do not understand that by the order made by the board of supervisors, at their September term, 1874, the county assumed any liability or contracted to pay to the sheriff the amount limited for deputy hire. The effect of the order was merely to allow him to retain out of the fees of his offices each year of his term, $800 for deputy hire, if actually expended, and a salary of $1,200 for his personal services, should the fees and emoluments of his office amount to that much. In the case of Cullom v. Dolloff, decided by the Supreme Court of the January term, 1879, the board of supervisors had fixed the compensation of the circuit clerk at $2,500 per annum, and had fixed the amount of his necessary clerk hire at $4,000.

The court in speaking of that order said: "We must hold that this order fixing compensation and clerk hire, etc., only provides that the clerk should retain of the fees received, the amount of his compensation and necessary clerk hire actually paid." If no liability to pay this demand is imposed by said section ten of the Constitution, or by any statute since then enacted, and if there was no legal obligation prior to the new Constitution, and the county has assumed none by any contract it has made, it necessarily follows that the claim here made by the defendant in error, that the earnings of his office should be first applied in payment of his salary, and that the amount paid by him to his deputy should be repaid him out of the county treasury, when he has never paid one cent of fees or earnings into that treasury, is wholly inadmissible. It is the intention of the law that sheriffs and other county offi-

cers should be prompt and diligent in collecting the fees due for their services, so that both the expenses of their offices and their own compensation shall be paid therefrom, and not that they and their offices should be charges upon the county treasury. Otherwise, a premium would be offered for inefficiency and negligence. The temptation would be held out to officers to exert themselves only to collect barely enough to pay their own salaries, and rely upon the county and tax-payers to pay their deputies and other expenses.

The judgment of the circuit court is reversed.

Reversed.